## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MRS. CONNIE MEGGS
14100 SW 101st Lane
Dunnellon FL, 34432-4700

MR. KELLY MEGGS
c/o Zach Meggs 14100 SW 101st Lane
Dunnellon FL, 34432-4700

          Civil Case No.

                  Plaintiffs,

     v.

NANCY PELOSI, in her official
capacity as Speaker of the United States
House of Representatives.
Office of the Speaker.
The U.S. Capitol. Suite H-232,
U.S. House of Representatives
Washington, D.C. 20515
Telephone:  (202) 225-0100

     and

BENNIE G. THOMPSON, in his official
capacity as Chair of the Select Committee
to Investigate the January 6th Attack on the
United States Capitol.
Rayburn House Office Building Suite 2466
U.S. House of Representatives
Washington, D.C. 20515
Telephone:  (202) 225-5876

     and

ELIZABETH L. CHENEY, in her official
capacity as a member of the United States
House of Representatives.
Cannon House Office Building, Suite 416
U.S. House of Representatives
Washington, D.C. 20515
Telephone:  (202) 225-2311

and

ADAM B. SCHIFF, in his official
capacity as a member of the United States
House of Representatives
Rayburn House Office Building, Suite 2309
U.S. House of Representatives
Washington, D.C. 20515
Telephone:  (202) 225-4176

and

JAMIE B. RASKIN, in his official
capacity as a member of the United States
House of Representatives;
Rayburn House Office Building, Suite 2242
U.S. House of Representatives
Washington, D.C. 20515
Telephone: (202) 225-5341

and

SUSAN E. LOFGREN, in her official
capacity as a member of the United States
House of Representatives
Longworth House Office Building, Suite 1401
U.S. House of Representatives
Washington, D.C. 20515
Telephone:  (202) 225-3072

and

ELAINE G. LURIA, in her official
capacity as a member of the United States
House of Representatives.
Cannon House Office Building, Suite 412
U.S. House of Representatives
Washington, D.C. 20515
Telephone:  (202) 225-4215

and

PETER R. AGUILAR, in his official
capacity as a member of the United States
House of Representatives
Cannon House Office Building, Suite 109

U.S. House of Representatives
Washington, D.C. 20515
Telephone:  (202) 225-3201

  and

STEPHANIE MURPHY, in her official
capacity as a member of the United States
House of Representatives
Longworth House Office Building, Suite 1710
U.S. House of Representatives
Washington, D.C. 20515
Telephone:  (202) 225-4305

  and

ADAM D. KINZINGER, in his official
capacity as a member of the United States
House of Representatives.
Rayburn House Office Building, Suite 3635
U.S. House of Representatives
Washington, D.C. 20515
Telephone:  (202) 225-3201

  and

SELECT COMMITTEE TO
INVESTIGATE THE JANUARY 6TH
ATTACK ON THE UNITED STATES
CAPITOL
Longworth House Office Building
Washington, DC 20515
Telephone: (202) 225-7800

  and

JOHN WOOD, in his official capacity as
Investigative Counsel for the Minority Members of
the House Select Committee to Investigate the
January 6 Attack on the United States Capitol.
Longworth House Office Building
Washington, DC 20515
Telephone: (202) 225-7800

and

TIMOTHY J. HEAPHY, in his official capacity

Chief Investigative Counsel for the House
Select Committee to Investigate the January
6 Attack on the United States Capitol
Longworth House Office Building
Washington, DC 20515
Telephone: (202) 225-7800

VERIZON COMMUNICATIONS, INC.
Serve:  General Counsel and Executive
Vice President Craig Silliman
1095 Avenue of the Americas
New York, NY 10036

      and

CELLCO PARTNERSHIP
d/b/a VERIZON WIRELESS
Serve:  General Counsel
ATTN: VSAT
1 Verizon Way
Basking Ridge, New Jersey 07920
Corporate Phone Number: 1-908-559-5490

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AGAINST HOUSE SELECT COMMITTEE TO INVESTIGATE THE
JANUARY 6 ATTACK ON THE UNITED STATES CAPITOL SUBPOENA**

Plaintiffs, Connie and Kelly Meggs, natural person, at all times relevant

herein private citizens, and a permanent resident of Dunnellon, Florida, sues for

declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure

("FRCP") and 28 U.S.C. §2201, *et seq.*, for an injunction and pursuant to 18  U.S.C. §

2702, and a motion for a speedy summary proceeding under Rule 57 of the Federal

Rules of Civil Procedure ("FRCP") to grant the relief requested herein as soon as

possible, and for emergency injunctive relief under Rule 65 thereof consistent with

the declaratory judgment requested herein on that same date, and for their

grounds, state as follows:

**INTRODUCTION**

Justice Scalia made the following foundational point on the Constitution and its progeny,

> *The problem with making the Constitution an all-purpose embodiment of our current preferences – pro-abortion, anti-abortion, or anything else, - is that it deprives the Constitution of its essential character as an obstacle to majority self-will and converts it (ironically) into a mechanism for placing the majority's current will beyond further democratic debate.*

Anton J. Scalia at the Thirteenth Anniversary of the Long Island Catholic, *On Faith, Lessons from an American Believer*, at p. 83.

1. Plaintiffs, Connie and Kelly Meggs ("Mrs. and Mr. Meggs"), private citizens, bring this complaint to invalidate and prohibit the enforcement of an overly-broad, and highly prejudicial Subpoena from the SELECT COMMITTEE TO INVESTIGATE THE JANUARY 6TH ATTACK ON THE UNITED STATES CAPITOL of the U.S. House of Representatives (the "Select Committee") issued to one or more telecommunications providers including VERIZON (the "Telecommunications Subpoenas"), without legal authority in violation of the Constitution and laws of the United States.

2. Plaintiffs timely contacted the Select Committee on December 30th, 2021, raising Plaintiffs' objections and privilege regarding the Subpoena served on Plaintiff on December 18, 2021, to Verizon for Mrs. Meggs phone records including all users, meaning her family members.

3. Congress itself enacted 18 U.S.C. § 2702 to limit the release of information from telecommunications companies about the users ("subscribers") of the

telecommunication companies and their private use of communication systems, excluding itself from that law.

4. The Select Committee's Subpoena invades the privacy of a U.S. citizen, worse than what occurred under the British Crown, Congress itself abrogated those rights and shielded telecommunications users like the Plaintiff from the piercing of the privacy of their communications by its own statutes.

5. This request for relief focuses on the Select Committee's Subpoena to Verizon requiring Verizon to provide the following information related to Ms. Meggs' Verizon Account which also includes Mr. Meggs' cellular telephone number on a family account plan for the period of **November 1, 2020, through January 31, 2021**, which phone is used by Mrs. Meggs and a family plan. [1] The Subpoena seeks:

Subscriber Information: All subscriber information for the Phone Number, including:

    a. Name, subscriber name, physical address, billing address, e-mail address, and any other address and contact information;

    b.  All authorized users on the associated account;

    c. All phone numbers associated with the account;

    d. Length of service (including start date) and types of service utilized;

    e. Telephone or instrument numbers (including MAC addresses), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEI"), Mobile Equipment Identifier ("MEID"), Mobile

---

[1]  The Select Committee is publicly arguing as recently as yesterday's Sunday morning news analysis television shows that it is focused on only 187 minutes of events on January 6, 2021

Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identifiers ("IMEI") associated with the accounts;

f.  Activation date and termination date of each device associated with

the account;

g.  Any and all number and/or account number changes prior to and after the account was activated;

h.  Other subscriber numbers or identities (including temporarily assigned network addresses and registration Internet Protocol ("IP") addresses); and

Connection Records and Records of Session Times and Durations: All call, message (SMS & MMS), Internet Protocol ("IP"), and data-connection detail records associated with Phone Numbers, including all phone numbers, IP addresses, or devices that communication with the Phone Number via delivered and undelivered inbound, outbound, and routed calls, messages, voicemail, and data connections.

6. The broad Subpoena is issued by Authority of the House of Representatives of the Congress of the United States of America signed by Chairman Bennie Thompson on December 15, 2021.

7. Here, the Select Committee has never sought Mrs. Meggs voluntary testimony or cooperation.

8. Mrs. Meggs is currently charged as a defendant in the U.S. District Court for the District of Columbia, case number Criminal No. 1:21-cr-00028-APM.

9. Mr. Meggs is currently charged as a defendant in the U.S. District Court for the District of Columbia, case number Criminal No. 1:21-cr-00028-APM.

10.  That case is currently scheduled for trial in the U.S. District Court for the

District of Columbia on April 19, 2021.

11.   The Select Committee exceeds its authority by searching for criminal activity when it is constitutionally prohibited from such activity through the separation of powers.

12.   Both Mr. and Mrs. Meggs are alleged to have walked from the Rotunda, southbound towards the House of Representatives.    Sixth Superseding Indictment ¶ 156 (ECF No. 513). And both are alleged to have exited the Capitol Building shortly after entering it.   *Id*. ¶ ¶145- 161. There are no specific allegations that Connie or Kelly Meggs destroyed any property or that either carried any weapons.  *Id*. generally. Further, there are no allegations of violent behavior.  *Id*. generally. There are no allegations that Connie or Kelly Meggs injured anyone, much less any specific allegation that either touched anything inside the Capitol.  *Id*. generally.

13.   However, the subpoena covers a more than ninety (90) day period *including clearly irrelevant time periods*.

14.   For example, the subpoena broadly seeks Mrs. and Mr. Meggs private and personal phone records over three months cannot serve a legitimate interest of the Select Committee.

15.   The Select Committee's Subpoena seeks information that is unrelated to the Special Committee's legislative role (if any), and violates the Meggs' protections under the FIRST, FOURTH, SIXTH AMENDMENTS to the United States Constitution, and their Marital Communications Privilege.

16.  A release of these records, with a pending criminal trial, would be unduly and highly Prejudicial to getting a fair jury cut from a cross-section of the District of Columbia.

17.  And the Subpoena seeks records that would provide information about the Meggs' personal life over three months, and because Mrs. Megg's Verizon Account was a family plan, other users are also associated with the account. And obviously this implicates the privacy interests of those third parties as well.

18.  The records that the Select Committee seeks include records of communications of the Meggs – both related and unrelated to the 2020 election – as well as personal communications with her family and friends.

19.  The subpoena cannot serve a legitimate interest of the Select Committee.

20.  A congressional subpoena "is valid only if it is related to, and in furtherance of, a legitimate task of the Congress." *Trump v. Mazars*, 140 S. Ct. 2019, 2031 (2020).

21.  The Select Committee does not have a right to criminally investigate private citizens.  *Id.*

22.  "Congress may not issue a subpoena for the purpose of law enforcement because those powers are assigned under our Constitution to the Executive and the Judiciary." *Id.* quoting *Quinn v. United States*, 349 U.S. 155, 161 (1955) (internal quotations omitted) (similar to *Watkins*).

23.  "Congress has no general power to inquire into private affairs and compel disclosures." *Id.* quoting *McGrain v. Daugherty*, 273 U.S. 135, 179 (1927)

(internal quotations omitted) (reversing a District Court order discharging from custody a subpoenaed witness who had failed to appear before a Senate committee). "There is no congressional power to expose for the sake of exposure." *Id.* quoting *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 506 (1975).

24.    The Committee admits its *purpose* is to oversee and review other criminal investigations to include "evaluating evidence" of a "terrorist attack." H. Res. 503 (June 28, 2021)(117th Congress, First Session.)(emphasis added).

25.    The Committee has designated the January 6th Protests as "Terrorists." H. Res. 503 (June 28, 2021)(117th Congress, First Session.)(emphasis added).

26.    This designation in a small jurisdiction such as the District of Columbia will create prejudice among the potential jury pool and prevent the Meggs' from getting a fair trial.

27.    The Select Committee is investigating a "Capitol Attack" the Meggs are alleged to have taken criminal part in. That is a fact.  Mrs. Meggs has a right to a fair trial under the Sixth Amendment, and not have political interference in their criminal trial and impacting the anticipated jury in the same jurisdiction.

28.    Terrorist attacks are defined in criminal codes[2], and fall under criminal investigation - which belongs to the states, the Executive and the Judiciary, not Congress.

---

[2] For example, the jurisdiction of the District of Columbia has state law on the subject, as most states do.  D.C. Code § 22-3152.

29.   Congress has had the recognized power *underlined* of informing itself on passing

or amending legislation, or considering whether the Congress should amend

legislation or leave existing statutes alone.

30.   But because Congress cannot over-throw the U.S. Constitution or cancel the

First Amendment, Congress cannot investigate political beliefs, violate the

Sixth Amendment and the right of a fair trial, or violate the Fourth Amendment

search and seizure law.

31.   Because Congress has no power to end free speech or repeal the First

Amendment, it has no power to investigate political beliefs or the exercise of free

speech.   By investigating the causes of the "terrorist attack," Congress by

definition would be investigating "political beliefs" as January 6th took place

both at the Capitol, where politics are fundamental, and in relation to a Rally

for the Incumbent President.

32.   All of which is being investigated by DOJ currently – as reflected by the fact

that Mrs. Meggs' received the subject subpoena, while facing a criminal trial.

33.   However, seeking to correct the state of the law, the analysis must be

different when Congressional inquiry involves ***compulsory*** process to violate

the Fourth Amendment rights of the people to be secure in their homes, persons,

and papers.

34.   What if Congress were to demand information from anyone who did not

donate to or did not vote for the current office holders?

35.   The Select Committee operates outside the longstanding tradition of the

House of Representatives and ratified House Rules. Instead of seeking clarification in the Courts, the Select Committee has operated like an extrajudicial body conducting political and criminal investigations that cannot possibly serve a legislative purpose.

36. The Select Committee wants Verizon to release phone data during the dates of November 1, 2020 to January 31, 2021 on Mrs. Meggs' Verizon account, to include all users, including Mr. Meggs. The Select Committee has asked Verizon for IP addresses, devices, billing addresses, account changes, a list of contacts, call session times, and dozens to hundreds of other data points or metadata. It's been reported that one hundred (100) others and tens of thousands of associates have been swept up in this extra-judicious process. This date range exceeds House Resolution 503's authority.

37. Congress cannot go rifling through their communications, maritally privileged communications and communications to include political opinions, feelings, or legal efforts to defend the criminal charges.

38. The politically motivated criminal investigation by the Select Committee into certain protestors and their "causes" at the Capitol jeopardizes the FIRST AMENDMENT, the FOURTH AMENDMENT and THE SIXTH AMENDMENT in the criminal actions and trials faced by Mrs. Meggs and her husband.

## PARTIES

39. Plaintiff Connie Meggs is a private citizen and a resident of Florida.

40. Plaintiff Kelly Meggs is a private citizen and a permanent resident of Florida,

who is currently in custody at the Correctional Treatment Facility under the Department of Corrections for the District of Columbia, detained in the District of Columbia, awaiting his trial.

41.   Defendant VERIZON COMMUNICATIONS, INC. has been subpoenaed to provide subscriber data about Mrs. and Mr. Meggs to the Select Committee in its role as providing telecommunications services to its "subscriber" (customer or user).

42.   Defendant VERIZONS Security Subpoena Compliance, 180 Washington Valley Road, Bedminster NJ  07921  has been subpoenaed to provide subscriber data about Mrs. Meggs to the Select Committee in its role as providing telecommunications services to its "subscriber" (customer or user).

43.   Speaker of the House NANCY PELOSI, in her official capacity as Speaker of the United States House of Representatives. The Speaker sponsored H.  Res. 503 and oversaw its passage in the House for the Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee")[3].  The Speaker also approved and ratified the issuance of the subpoena Verizon Subpoenas for Mrs. Meggs account, from Washington, D.C.

44.   Congressman BENNIE G. THOMPSON, in his official capacity as Chairman of The Select Committee to Investigate the January 6th Attack on the United States Capitol.  Unlike the present investigation into protestors at the Capitol

---

[3] Congress.gov, "H.Res.503 - Establishing the Select Committee to Investigate the January 6th Attack on the United States Capitol," available at https://www.congress.gov/bill/ ll7thcongress/ house-resolution/503/actions (last accessed Dec. 16, 2021).

on January 6th, Chairman Thompson makes his biased political position on protestors pivot on the political message of those protestors when he wrote regarding protestors in Portland in a letter dated July 20, 2020 to Secretary Chad Wolf of the Trump Administration:

> "As Members of the Committee on Homeland Security, we are profoundly troubled by allegations that personnel from the Department of Homeland Security (DHS), including U.S. Customs and Border Protection (CBP), **have detained *protestors in Portland, Oregon*, using procedures that may violate the rights guaranteed to all Americans under our Constitution**."

(See attached copy of Chairman Thompson letter dated July 20, 2020 to Secretary Chad Wolf). The same concerns clearly do not exist for the January 6th Protestors, who instead have been designated as "terrorists" by the Select Committee under the Chairman. While some attackers may have been violent, that is to be proven in a court of law, and there are no allegations of anyone being injured by either Mr. or Mrs. Meggs[4].

45.   ELIZABETH L. CHENEY, because Ms. Cheney serves as a Member of the Select Committee that issued the Verizon Subpoena for Mrs. Meggs account from their offices in Washington, D.C.

46.   ADAM B. SCHIFF, because Mr. Schiff serves as a Member of the Select

---

[4] "The government charged at least twenty-two individuals in Portland with assaulting an officer, in violation of 18 U.S.C. 111(a). See 1:21cr00040, ECF 138 at p.5 and ECF 138-1, Attachment A, is a List of Portland Defendants and Outcomes. Of those identified by counsel therein, at least 25 cases were dismissed, including one in which the defendant carried a knapsack with 14 commercial-grade fireworks. *Id*. Of those cases, at least six cases were dismissed with prejudice through a deferred resolution agreement. *Id*. In other cases involving alleged acts of violence, the government agreed to recommend probation. *Id*."

Committee that issued the Verizon Subpoena for Mrs. Meggs account from their offices in Washington, D.C.

47.   JAMIE B. RASKIN, because Mr. Raskin serves as a Member of the Select Committee that issued the Verizon Subpoena for Mrs. Meggs account from their offices in Washington, D.C.

48.   SUSAN ELLEN "ZOE" LOFGREN, because Ms. Lofgren serves as a Member of the Select Committee that issued the Verizon Subpoena for Mrs. Meggs account from their offices in Washington, D.C.

49.   ELAINE G. LURIA, because Ms. Luria serves as a Member of the Select Committee that issued the Verizon Subpoena for Mrs. Meggs account from their offices in Washington, D.C.

50.   PETER R. AGUILAR, because Mr. Aguilar serves as a Member of the Select Committee that issued the Verizon Subpoena for Mrs. Meggs account from their offices in Washington, D.C.

51.   STEPHANIE MURPHY, because Ms. Murphy serves as a Member of the Select Committee that issued the Verizon Subpoena for Mrs. Meggs account from their offices in Washington, D.C.

52.   ADAM D. KINZINGER because Mr. Kinzinger serves as a Member of the Select Committee that issued the Verizon Subpoena for Mrs. Meggs account from their offices in Washington, D.C.

53.   JOHN WOOD, in his official capacity as Investigative Counsel for the Minority Members of the House Select Committee to Investigate the January 6

Attack on the United States Capitol.

54. THE SELECT COMMITTEE TO INVESTIGATE THE JANUARY 6TH ATTACK ON THE UNITED STATES CAPITOL is convened under House Resolution 503 of the 117th Conference known as the "Select Committee" led by Chairman Thompson. The Meggs, however, are private citizens who have never served in government. Both have reasonable expectations of privacy and under no required record keeping regulations like government officials or government employees. And both have Constitutional protections.

55. H. Res. 503 establishes three "functions" of the Select Committee: (1) to "investigate the facts, circumstances, and causes relating to the domestic terrorist attack on the Capitol"; (2) to "identify, review, and evaluate the causes of and the lessons learned from the domestic terrorist attack on the Capitol"; and (3) to "issue a final report to the House containing such findings, conclusions, and recommendations for corrective measures described in subsection (c) as it may deem necessary."

56. TIMOTHY J. HEAPHY, in his official capacity Chief Investigative Counsel for the House Select Committee to Investigate the January 6 Attack on the United States Capitol.

**JURISDICTION AND VENUE**

57. This Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, because this action arises under the Constitution and laws of the United States.

58. The jurisdiction of the Court to grant declaratory relief is conferred by 28 U.S.C. §§ 2201 and 2202 and by Rule 57, Fed. R. Civ. P., and emergency injunctive relief by Rule 65, Fed. R. Civ. P. The declaratory and injunctive relief that Plaintiff requests would redress his injuries for Article III purposes.

59. The Subpoena issued by the Defendants compels a Production in Washington, D.C., at 150A Longworth House Office Building, Washington DC 20515.

60. This Court has personal jurisdiction over the Verizon Defendants to the extent that Verizon would have to respond to the Congressional Subpoena for Mrs. Meggs' account, Verizon Case # 21545972.

61. Venue is proper under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claim occurred in Washington, DC.

**RELEVANT FACTS COMMON TO ALL COUNTS**

62. These facts are to inform and to be incorporated within all Counts of this Complaint as if restated within each of the Counts.

63. In a well-known episode on January 6, 2021, a large group of protestors in Washington, D.C., entered the U.S. Capitol, and breached security. The Department of Justice has arrested more than 700 individuals in connection with unlawful activities on January 6th.

64. For context, very roughly, on the East / Supreme Court side of the U.S. Capitol building, the USCP issued permits for six (6) demonstrations to take place on January 6, 2021, on the U.S. Capitol grounds.

65. By contrast, on the West / Washington Monument side of the U.S. Capitol

Building the U.S. Capitol Police attempted to (that is one may discuss ways to make it more clear and secure in any future examples, and not subject to confusion once bike-rack-style barricades were moved by previous groups of crowds) cordon off an enormous area of the Capitol Grounds from the West face of the building to the scaffolding being assembled for the inauguration on January 20, down to the edge of Second Street West across from the fountain.

66.   The House passed H.R. 3233 on May 19, 2021.

67.   The Senate considered a cloture motion, which failed to proceed on H.R. 3233 on May 28, 2021.

68.   On June 28, 2021, Speaker Pelosi introduced H. Res. 503, "Establishing the Select Committee to Investigate the January 6th Attack on the United States Capitol." Two days later, the House passed H. Res. 503 on a near party-line vote of 222 yeas and 190 nays.

69.   House Minority Leader Kevin McCarthy recommended five Republican members to serve on the Select Committee, consistent with H. Res. 503:  But Speaker Pelosi did not appoint any of Minority Leader McCarthy's recommended minority members. In a public statement, she acknowledged that her refusal to appoint the members recommended by the Minority Leader was an "unprecedented decision.[5]"

70.   Only two Members from the Republican Party are members of this Select

---

[5] Nancy Pelosi, Speaker, U.S. House of Representatives, Pelosi Statement on Republican Recommendations to Serve on the Select Committee to Investigate the January 6th Attack on the U.S. Capitol (July 21 , 2021 ), https://www.speaker.gov/newsroom/ 72121-2.

Committee, Rep. Liz Cheney of Wyoming and Rep. Adam Kinzinger of Illinois, and voted in favor of H. Res. 503[6], both have been already censured by their respective home Districts,[7] which reflects the very partisan nature of the Select Committee.

71.  Speaker Pelosi failed to appoint members consistent with the authorizing resolution of the Select Committee. Pelosi has appointed only nine members of Congress to serve on the Select Committee; whereas the authorizing resolution instructs the Speaker "shall" appoint thirteen members. H. Res. 503 § 2(a).

72.  Further, of those nine members Speaker Pelosi has appointed, none were appointed after consultation with the minority member, as is required by the authorizing resolution. H. Res. 503 § 2(a).

73.  Authorized congressional committees have subpoena authority implied by Article I of the Constitution. *McGrain v. Daugherty*, 273 U.S. 135, 174 (1927). The Select Committee, however, is not an authorized congressional committee because it fails to comport with its own authorizing resolution, H. Res. 503.

---

[6] Clerk, United States House of Representatives, "Roll Call 197," *available at* clerk.house.gov/Notes/2021197.

[7] "Republicans in Wyoming have voted to no longer recognize Rep. Liz Cheney as a member of their party, according to The Casper Star-Tribune and the Associated Press.  Wyoming GOP Votes to No Longer Recognize Liz Cheney as a Republican in Move Her Rep Calls 'Laughable' by Adam Parsley, People.com,  November 16, 2021.  https://people.com/politics/wyoming-republicans-vote-no-longer-recognize-liz-cheney-party-member/

'The LaSalle County Republican Central Committee overwhelmingly passed a resolution censuring the GOP congressman [Kinsinger] for taking actions "contrary to the values" of the party, county GOP Chair Larry Smith announced.' *Kinzinger slapped with censure by Illinois county GOP, Politico, 02/04/2021.*

74. The Verizon Subpoena dates are a clear violation of the U.S. Constitution and the authorizing resolution that created the Select Committee.

75. And H. Res. 503 establishes three "functions" of the Select Committee: (1) to "investigate the facts, circumstances, and causes relating to the domestic terrorist attack on the  Capitol"; (2) to "identify, review, and evaluate the causes of and the lessons learned from the  domestic terrorist attack on the Capitol"; and (3) to "issue a final report to the House containing  such findings, conclusions, and recommendations for corrective measures described in subsection  (c) as it may deem necessary."

76. Subsection (c) of Section 4 describes three categories of "corrective measures": "changes in law, policy, procedures, rules, or regulations that could be taken" (1) "to prevent future  acts of violence, domestic terrorism, and domestic violent extremism, including acts targeted at  American democratic institutions"; (2) "to improve the security posture of the United States Capitol Complex while preserving accessibility of the Capitol Complex for all Americans"; and (3) "to strengthen the security and resilience of the United States and American democratic  institutions against violence, domestic terrorism, and domestic violent extremism."

77. And Congressman Adam Schiff, a member of the Committee, revealed on national television recently that, "all [the Committee] can do is expose all the malefactors, follow the evidence, wherever it leads, tell the American people the story of what went into January 6th, all the planning that went into it, who

was behind it in terms of the money."[8]

78. This of course reflects that Congress' goal is not to pass legislation but to punish anyone it wants to point the finger at.

79. Congressman Kinzinger recently admitted on live television that the Committee was engaged in a criminal investigation to determine whether laws were broken on January 6, 2021.[9]

80. Congress has failed to identify a clear legislative purpose for the Select Committee.

**The Select Committee's Verizon Subpoena**

81. The Verizon subpoena, issued by the Select Committee on December 15, 2021, instructs Verizon to produce subscriber information and mobile phone data associated with Mrs. Meggs' account and a mobile phone number that belongs to her husband, who has also been criminally charged.

82. The subscriber information requested includes subscriber names and contact information, authorized users, time of service provided, account changes,

---

[8] Late Night with Seth Meyers, Rep. Adam Schiff Says It Was Torture Listening to Kevin McCarthy's Speech, YouTube (Nov. 22, 2021), https://www.youtube.com/watch?v=mPvKNFC615o.

[9] ABC News, 'This Week' Transcript 12-19-21: Dr. Anthony Fauci & Rep. Adam Kinzinger, ABC News (Dec. 19, 2021), https://abcnews.go.com/Politics/week-transcript-12-12-21-dr-anthony-fauci/story?id=81833124; CNN Politics, Kinzinger says January 6 panel is investigating Trump's involvement in insurrection, Cable News Network (Dec. 19, 2021) https://www.cnn.com/2021/12/19/politics/adam-kinzinger-trump-investigation-insurrection-cnntv/index.html

associated IP addresses, and other metadata. The mobile phone data requested could include all calls, text messages, and other records of communications associated with that phone number. This data can be used for historic mobile site analysis. The Verizon subpoena requested all mobile phone data for three months: from November 1, 2020 and January 31, 2021.

83.   Verizon is only one of the major telecommunications firms subpoenaed by the Select Committee. In order to inform customers about compromises to their privacy, and potential violations of the Sixth Amendment and the Right to a Fair Trial, Verizon sent out a letter informing customers, like Mrs. Meggs, notifying them that they had received a subpoena. This subpoena is not issued by a court.

84.   Verizon wrote, "According to our records, you are the subscriber of that phone number." The production will sweep up personal correspondences that cannot possibly have any relevance to the Select Committee.

85.   Verizon also said the remedy to litigating this issue was to seek redress in a court of law. "Please be advised that unless Verizon receives a court document challenging the subpoena by January 5, 2022, Verizon is compelled to comply with the subpoena."

86.   The breadth and invasiveness of the Verizon subpoena also gave the appearance of a criminal investigation, not a legislative fact-finding mission. It seeks private data used to track an individual person's communications and location, information that bears on the criminal case, Criminal No. 1:21-cr-

00028-APM.  That case is currently scheduled for trial in the U.S. District Court on April 19, 2021.

**C. The Select Committee cannot obtain records under the Verizon Subpoena consistent  with the Stored Communications Act**

87.   The Stored Communications Act prohibits the Select Committee from obtaining  the subpoenaed records from Verizon.

88.   There is no question that Mr. or Mrs. Meggs' precise location, as shown in videos at every stage of January 6 events, is relevant and part of the criminal investigation and indictment of them in the District of Columbia.

89.   To the extent the Select Committee is seeking production of the contents of communications, that request is prohibited under Section 2702(a)(1) of Title 18. 122. The Stored Communications Act generally provides that "a person or entity providing electronic communication service to the public shall not knowingly divulge to any  person or entity the contents of a communication while in electronic storage by that service." 18  U.S.C. § 2702(a)(1).

90.   Verizon is "a person or entity providing electronic communication service to the  public" within the meaning of the Stored Communications Act.

91.   The Select Committee qualifies as "any person or entity" within the meaning of the  Stored Communications Act.

92.   Section 2702(a)(1) therefore prohibits knowing disclosure of "the contents of a  communication" stored by Verizon to the Select Committee absent an express statutory exception  outlined in Section 2702(b).

93.   None of the statutory exceptions in Section 2702(b) applies to the Select Committee's subpoena.

94.   To the extent the Select Committee is seeking production of non-communication records and information, that request is prohibited under Section 2702(c) of Title 18.  128. The Stored Communications Act provides that "[a] provider described in [Section  2702(a)] may divulge a record or other information pertaining to a subscriber to or customer of  such service (not including the contents of communications covered by subsection (a)(1) or  (a)(2))" if one of seven criteria is met.

95.   Mrs. Meggs is "a subscriber to or customer of [Verizon's] service" within the meaning of the Stored Communication Act.

96.   The Select Committee cannot obtain the subpoenaed records under Section 2702(c)(1) because disclosure would not be "as otherwise authorized in section 2703." 18 U.S.C.  § 2702(c)(1). Specifically, on information and belief, the Select Committee has not obtained and  cannot obtain "a warrant issued using the procedures described in the Federal Rules of Criminal  Procedure . . . by a court of competent jurisdiction," as would be required to obtain records "in  electronic storage in an electronic communications system for one hundred days or less." Id. §  2703(a). Nor has the Select Committee provided Mrs. Meggs with "prior notice" and obtained  either (i) "an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena" or (ii) "a court order," as would be required to obtain records "in  electronic storage

. . . for more than one hundred and eighty days." Id. § 2703(a), (b)(1).  131. The Select Committee does not have lawful consent to obtain the subpoenaed records. See id. § 2702(c)(2).

97.   The Select Committee does not constitute or represent "a law enforcement agency" within the meaning of the Stored Communications Act. Id. § 2702©(7).

98.   No other exception in Section 2702(c) would authorize the Select Committee to  obtain the subpoenaed records.

**D. The Verizon Subpoena violates the Fourth Amendment**

99. The Verizon Subpoena is as near to general warrants as possible. This Select Committee was appointed by one party, violating House Rules, and is taking unprecedented steps to issue criminal referrals and votes of contempt for even those cooperating with the Select Committee.

100. On or about December 18, 2021, Mrs. Meggs received a letter dated December 17, 2021 from Verizon Security Subpoena Compliance notifying her of the subpoena. The letter stated that Verizon would comply with the subpoena unless it "receives a court document challenging the subpoena by December 15, 2021."

101. The Verizon Subpoena instructs Verizon to produce subscriber information and mobile  phone data associated with the phone number(s) under Mrs. Meggs' account.

102. The subscriber information requested includes subscriber names and contact information, authorized users, time of service provided, account changes,

associated IP addresses,  session times, and other metadata.

103. The mobile phone data requested includes all calls, text messages, and other records  of communications associated with that phone number.

104. This data can be used for historic mobile site analysis.

105. The requested data covers four full months: November 1, 2020 through January 31,  2021.

106. Mrs. Meggs has a reasonable expectation of privacy in her family's mobile phone and data and has a marital privilege.

107. The Fourth Amendment enumerates the right of private individuals to be free from  unreasonable search and seizure by the government into their persons, houses, papers, and effects.  It also protects a person's reasonable privacy expectations. *Katz v. United States*, 389 U.S. 347,  351 (1967).

108. The fact that a third party at least temporarily stores a person's mobile phone data does  not alter his expectation or its reasonableness. *Carpenter v. United States*, 138 S. Ct. 2206, 2217  (2018).

109. The Fourth Amendment restricts the ability of the Select Committee to issue sweeping subpoenas untethered from any valid legislative purpose. *See Oklahoma Press Pub. Co.  v. Walling*, 327 U.S. 186, 196 (1946).

110. If the government, including the Select Committee, seeks to obtain documents or  data protected by the Fourth Amendment, it must be obtained by consent or otherwise authorized by law. The Meggs have not been provided notice by Defendants or given their consent for Verizon to produce his mobile

phone data to the Select Committee. And for the reasons discussed infra, the Select Committee's subpoenas are invalid.

111. An all-encompassing subpoena for personal, nonofficial documents falls outside the scope of Congress' legitimate legislative power. *See Trump v. Mazars USA*, LLP, 140 S. Ct. 2019, 2040 (2020).

112. The Select Committee's subpoena to both Verizon and Mr. and Mrs. Meggs are so broad and indefinite as to exceed the lawfully authorized purpose of the Select Committee. *See McPhaul v. United States*, 364 U.S. 372, 381 (1960). The subpoena to Verizon, in particular, contains no limitations seeking to preserve applicable privileges or prevent violations of constitutional rights.

113. For the Select Committee to subpoena Verizon for all the Meggs' personal mobile phone data over the course of three months is entirely unreasonable. Such a request exceeds any lawfully authorized purpose.

114. As the subpoena in question exceeds the lawfully authorized purpose of the Select Committee, compliance with such subpoenas would violate the Meggs' Fourth Amendment protection against unlawful search and seizure. The subpoena is thus invalid and unenforceable.

**E. The Select Committee is a Government body actively overreaching and ignoring the Meggs' Constitutional Rights in the First and Sixth Amendments.**

115. There cannot be public interests—in probing the Meggs' phone records. This relates to criminal investigation and is a duty not reserved for Congress. See, e.,g. *Barenblatt v. United States*, 360 U.S. 109, 112 (1959), Watkins v. United

States, 354 U.S. 178, 197 (1957), *Gibson v. Florida Legislative Investigation Comm.*, 372 U.S. 539 (1963).)

116. Because the Select Committee is issuing subpoenas for third-party information, and without notice, there is no one to contest or object (rights afforded to witnesses producing documents and testimony) on the grounds of pertinency and forcing the Select Committee, as it's constitutionally required to do (*Deutch v. United States*, 367 U.S. 456, 467-68 (1961)), to establish a nexus between the information sought and a subject of overriding and compelling public interest. The Select Committee has not provided clarity in what or why they're seeking broad phone records. The opportunity to request clarity and object is established precedent (*Watkins*, 354 U.S. at 214-15.).

117. Private communications between Mrs. Meggs and her husband Kelly Meggs are subject to the marital communications privilege recognized in court proceedings. *SEC v. Lavin*, 111 F.3d 921, 925, (D.C. Cir. 1997); (*see also United States v. Brock*, 724 F.3d 817, 820-821, (7th Cir. 2013)(*citing Trammel v. United States*, 445 U.S. 40, 51, 100 S. Ct. 906, 63 L. Ed. 2d 186 (1980).

118. Those communications are fundamentally also protected by the FIRST AMENDMENT's Freedom of Association. *See Buckley v. Valeo*, 424 U.S. 1, 64 (1976); *Black Panther Party v. Smith*, 661 F.2d 1243, 1267 (D.C. Cir. 1981); *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Fed. Election Comm'n*, 333 F.3d 168, 179 (D.C. Cir. 2003).

119. And further reflective of the injection into the area of criminal law that

belongs to the States and the Executive, in seeking to subpoena Mrs. Meggs' phone records, the Committee is directly interfering with the Judicial Branch, which violates the Separations of Powers, wherein Mr. and Mrs. Connie Meggs have a Sixth Amendment Right to a Fair Trial, and they are both currently scheduled for a criminal trial on felony criminal charges this April in the District of Columbia, where the Defendants and the Committee operate.

120. The Committee admits its "purpose" is to "investigate"  and "oversee" other criminal investigations to include "evaluating evidence" of a "terrorist attack," but terrorist attacks are defined in criminal codes and fall under criminal investigation – which is not within this Committee' legitimate purposes.  H. Res. 503 (June 28, 2021)(117th Congress, First Session.)(emphasis added).

121. The Select Committee also has no provisions for a taint team or analogous filter for privileged information. The executive and judicial branches do not act with such restraint. The entirety of the demanded information, including that which is constitutionally or otherwise protected, will be turned over to the Select Committee to do with as it pleases.

122. The Select Committee has a well-documented history of making documents public and even alleged to have leaked to at least one news outlet in particular.

123. The Verizon subpoena is also a clear effort to chill the speech of the Select Committee  Member's political adversaries.

124. Allowing an entirely partisan select committee of Congress to subpoena the personal mobile phone data of Mrs. Meggs and her husband, alleged members

of the Oath Keepers, an organization that was merely a supporter of President Trump's and not listed "terrorist" seeks to work a massive chilling of current and future activists' associational and free speech rights.

125. What if the opposite were to happen to "Black Lives Matter" activists during a Republican majority? Without limit to date range or geography or persons? There would be no one to challenge power and the First Amendment would effectively be speech sponsored by the government and major corporations. See, e.g., *N.A.A.C.P. v. Alabama*, 357 U.S. 449 (1958).

## **FIRST CAUSE OF ACTION**

### *Injunctive Relief and Temporary Restraining Order  for violation of 18 U.S.C. § 2702*

126. Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs and incorporates all of these allegations herein for the purpose of and in support of this Cause of Action as if fully set forth herein.

127. The Supreme Court explained that "[o]ur analysis must begin with the recognition that, where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat--for example, the constitutionality of a law threatened to be enforced." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-129, 127 S. Ct. 764, 772, 166 L. Ed. 2d 604, 616, (2007).

128. Plaintiff asks for injunctive relief based upon the issuance of a Committee subpoena which has failed to follow its own rules and lacks a legislative

purpose.

129. Congress' failure to act in accordance with its own rules is judicially

130. cognizable. *Yellin v. United States,* 374 U.S. 109, 114 (1963). This is particularly significant where a person's fundamental rights are involved.

131. The Supreme Court has held, Congress' role does not include criminal investigations or the regulation of violent crime.  '[In Lopez] [w]e rejected these "costs of crime" and "national productivity" arguments because they would permit Congress  to "regulate not only all violent crime, but all activities that might lead to violent crime, regardless of how tenuously they relate to interstate commerce."' *United States v. Morrison*, 529 U.S. 598, 607, 120 S. Ct. 1740, 1751, 146 L. Ed. 2d 658, 672-673 (2000)(*citing United States v. Lopez*, 514 U.S. at 568, 577-578 (KENNEDY, J., concurring); *United States v. Harris*, 106 U.S. at 635).

132. This Subpoena violates the Constitutional Rights of the Plaintiffs to include the First, Fourth and Sixth Amendments.

133. And the restrictions of 18  U.S.C. § 2702 restricts the release of telecommunications subscriber information.

134. The Stored Communications Act, 18 U.S.C. §§ 2701 et seq., prohibits an electronic service provider like Verizon from knowingly divulging "a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications …) to any governmental entity." 18 U.S.C. § 2702(a)(3).

135. The law provides exceptions that allow for the disclosure of non-content customer records under certain conditions, including where a "governmental entity" obtains a judicial warrant or "an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena …" 18 U.S.C. §§ 2702(c)(1), 2703(c).

136. The statute defines the term "governmental entity" as "a department or agency of the United States or any State or political subdivision thereof." 18 U.S.C. § 2711(4). The definition does not include the U.S. Congress. It is not as though Congress was unaware of the need to include itself in the definition of a criminal statute if it wanted the definition to apply to itself.

### SECOND CAUSE OF ACTION
#### *Declaratory Judgment`*

137. Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs and incorporates all of these allegations herein for the purpose of and in support of this Cause of Action as if fully set forth herein.

138. Plaintiff seeks declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure ("FRCP") and 28 U.S.C. §2201, et seq. to clarify Plaintiff's rights to not have her records produced by Verizon and in violation of her Constitutional rights including the SIXTH AMENDMENT to a Committee without legislative purpose because the admitted purpose of the Select Committee is to investigate an "attack."

139. This Court Can Grant Declaratory Judgment in a Summary Proceeding.  This Court has the authority to enter a declaratory judgment and to provide

injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.  The court may order a speedy hearing of a declaratory-judgment action.  Fed. Rules Civ. Proc. R. 57, Advisory Committee Notes.

140. A declaratory judgment is appropriate when it will "terminate the controversy" giving rise to the proceeding.  Id.  Inasmuch as it often involves only an issue of law on undisputed or relatively undisputed facts, it operates frequently as a summary proceeding, justifying docketing the case for early hearing as on a motion.  Id.

141. Criminal Law and Regulating Violence is not in Congress' Jurisdiction.

142. The Select Committee does not have a right to criminally investigate.

 Congress may not issue a subpoena for the purpose of "law enforcement," because "those powers are assigned under our Constitution to the Executive and the Judiciary." … Congress has no "'general' power to inquire into private affairs and compel disclosures," id., at 173-174, 47 S. Ct. 319, 71 L. Ed. 580, and "there is no congressional power to expose for the sake of exposure," Watkins, 354 U. S., at 200, 77 S. Ct. 1173, 1 L. Ed. 2d 1273, 76 Ohio Law Abs. 225. "Investigations conducted solely for the personal aggrandizement of the investigators or to 'punish' those investigated are indefensible." Id., at 187, 77 S. Ct. 1173, 1 L. Ed. 2d 1273, 76 Ohio Law Abs. 225.

*Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031-2032, 207 L. Ed. 2d 951, 964-965, (2020).

143. In *United States v. Morrison*, the Supreme Court held that Gender Related Crimes could not be regulated by Congress, the Court made clear that Congress' role has limits.

'Congress' role does not include criminal investigations or the regulation of violent crime. '[In *Lopez*] [w]e rejected these "costs of crime" and

"national productivity" arguments because they would permit Congress to "regulate not only all violent crime, but all activities that might lead to violent crime, regardless of how tenuously they relate to interstate commerce.'" *Id.* at 607 (*citing United States v. Lopez*, 514 U.S. at 568, 577-578 (KENNEDY, J., concurring); *United States v. Harris*, 106 U.S. at 635).
*United States v. Morrison*, 529 U.S. 598, 612-613, 120 S. Ct. 1740, 1751, 146 L. Ed. 2d 658, 672-673 (2000).

144. Similarly, the Court further upheld the unconstitutional infringement of intruding upon a state's criminal jurisdiction when it found that the federal act, the Chemical Weapons Convention Implementation Act could not apply to a local crime.  *See Bond v. United States*, 572 U.S. 844, 134 S. Ct. 2077, 189 L. Ed. 2d 1, (2014) (emphasis added).

145. The Subject Subpoena violates Mrs. Meggs and her husband's Constitutional Rights, including their right of privacy under the FOURTH AMENDMENT, the Right of the Freedom of Association under the FIRST AMENDMENT and the Right to a Fair Trial under the SIXTH AMENDMENT to include a jury with a cross section of the population.

146. DC residents live in close proximity of the Select Committee's work and will constitute the jury pool for the currently scheduled criminal trial.

147. Allegations by the partisan Committee clearly viewing Portland Protestors as individuals with Constitutional Rights while viewing January 6th Protestors as committing a "Terrorist Attack" will lead to indelible prejudice to the jury pool.

'As a fundamental matter, "[w]e accept the fair-cross-section requirement as fundamental to the jury trial guaranteed by the Sixth Amendment and are convinced that the requirement has solid foundation. The purpose of a jury is to guard against the exercise of arbitrary power -- to make available the commonsense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps overconditioned or biased response of a judge.'

*Taylor v. Louisiana*, 419 U.S. 522, 530-531, 95 S. Ct. 692, 698, 42 L. Ed. 2d 690, 698, (1975)(*citing Duncan* v. *Louisiana*, 391 U.S., at 155-156).

148. The Special Committee cannot demonstrate a compelling justification that would justify this intrusion into criminal law and the judiciary's role, and this Court recognizes the rights of a criminal defendant who is supposed to be able to have a fair trial in the same jurisdiction, Washington, D.C.

149. Further, Plaintiffs Request a Declaratory judgment that recognizes that communications on the subject phone numbers and users includes communications subject to the marital communications privilege, which would be indelibly violated by this subpoena that seeks ALL phone records from November 1, 2020 to January 31, 2021.

150. Pursuant to 28 U.S.C. § 2201, declaratory judgment under federal law is available "In a case of actual controversy within its jurisdiction," such that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Moreover, "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." Id.

151. Here, there is an actual dispute as to whether Verizon and other

telecommunication companies must (and therefore may because they can only do if compelled) turn over subscriber / user information from Mrs. Meggs' Account and Mr. Meggs' mobile number to the Select Committee.

152. Because the requested declaratory judgment will terminate the controversy arising from the conflict of this Issued Subpoena, and the facts are not in dispute, it is appropriate for this Court to grant this relief in a summary proceeding without an evidentiary hearing or discovery. See Notes of Advisory Committee on Federal Rules of Civil Procedure, Fed. R. Civ. P. 57.

153. The Plaintiff understands the gravity of this filing, and respectfully requests the relief as equitable in nature, to address the Constitution, and the Bill of Rights which has always represented the rights of the individual, the minority, to protect individuals from government overreach.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs asks the Court to enter judgment in their favor and against Defendants  and to order the following relief:

a. A declaratory judgment that the Verizon Subpoena are ultra vires, unlawful, and unenforceable;

b. A declaratory judgment that the Verizon Subpoena, in part or in whole, serves no valid legislative purpose and exceed the Select Committee's Constitutional  authority;

c. A declaratory judgement that the Select Committee is acting for political purposes and not for legislative purposes.

36

d. A declaratory judgment that the Verizon Subpoena violates Mrs. Meggs' First  Amendment rights;

e. A declaratory judgment that the Verizon Subpoena violates Mrs. Meggs' Fourth  Amendment rights;

f. A declaratory judgment that compliance with the Verizon Subpoena violates the Plaintiffs' right under the Sixth Amendment.

g. A declaratory judgment that compliance with the Verizon Subpoena would violate the Marital Communications Privilege.

h. A declaratory judgment that compliance with the Verizon Subpoena would violate Stored Communications Act;

i. An injunction quashing the Verizon Subpoena and prohibiting their enforcement by Defendants;

j. An injunction prohibiting Defendants from imposing sanctions for noncompliance  with the Verizon Subpoena;

k. An injunction prohibiting Defendants from inspecting, using, maintaining, or  disclosing any information obtained as a result of  the Verizon Subpoena;

l. An award in favor of Plaintiff for his reasonable expenses, including attorneys' fees and costs, incurred as a result of the Verizon Subpoena; and

m. Any and all other relief that the Court deems just and proper.

Dated:  January 3, 2022

Respectfully Submitted,

___/s/ Juli Z. Haller_____
Juli Z. Haller, DC 466921
The Law Offices of Julia Haller
601 Pennsylvania Avenue, N.W.
S. Building, Suite 900
Washington, DC 20004
Telephone: (202) 729-2201
HallerJulia@outlook.com

*Counsel for PetitioenerConnie Meggs*

___/s/ Jonathon A. Moseley____
Jonathon A. Moseley, Esq.
USDCDC Bar No. VA005
Virginia State Bar No. 41058
Mailing address only:
5765-F Burke Centre Parkway, PMB #337
Burke, Virginia 22015
Telephone:  (703) 656-1230
Contact@JonMoseley.com

*Counsel for Petitioner Kelly Meggs*