**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MRS. CONNIE MEGGS; | ) | |
| MR. KELLY MEGGS, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-00005-CJN |
| | ) | |
| NANCY PELOSI, *et al.* | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |

## CONGRESSIONAL DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ..............................................................................................1

I.      Plaintiffs' challenges to the validity of the Select Committee fail .......................1

II.     The Select Committee is not criminally prosecuting Plaintiffs ............................7

III.    Plaintiffs' other arguments fail ..................................................................11

CONCLUSION ................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Austin v. United States*,
　509 U.S. 602 (1993) ........................................................................................................10

*Bowers v. United States*,
　202 F.2d 447 (D.C. Cir. 1953) ......................................................................................7, 8

*Carpenter v. United States*,
　138 S. Ct. 2206 (2018) ................................................................................................12, 13

*Doe v. McMillan*,
　412 U.S. 306 (1973) ...........................................................................................................4

*Deutch v. United States*,
　367 U.S. 456 (1961) ......................................................................................................7, 8

*\*Eastland v. U. S. Servicemen's Fund*,
　421 U.S. 491 (1975) ....................................................................................................3, 8, 9

*Hubbard v. United States*,
　514 U.S. 695 (1995) .........................................................................................................15

*Johnson v. Panetta*,
　953 F. Supp. 2d 244 (D.D.C. 2013) ..................................................................................15

*Judicial Watch v. Schiff*,
　998 F.3d 989 (D.C. Cir. 2021) ...........................................................................................3

*McGrain v. Daugherty*,
　273 U.S. 135 (1927) ...........................................................................................................3

*Puerto Rico v. Sanchez Valle*,
　579 U.S. 59 (2016) ...........................................................................................................11

*Rangel v. Boehner*,
　20 F. Supp. 3d 148 (D.D.C. 2013) .....................................................................................5

*S.E.C. v. Lavin*,
　111 F.3d 921 (D.C. Cir. 1997) .........................................................................................14

*Shelton v. United States*,
　404 F.2d 1292 (D.C. Cir. 1968) .........................................................................................3

*Sinclair v. United States*,
　279 U.S. 263 (1929) ...........................................................................................................3

*Smith v. Maryland*,
 442 U.S. 735 (1979)..................................................................................12

*Trammel v. United States*,
 445 U.S. 40 (1980).................................................................................13, 14

*\*Trump v. Thompson*,
 20 F.4th 10 (D.C. Cir. 2021) ....................................................................1, 3

*United States v. Brock*,
 724 F.3d 817 (7th Cir. 2013) ........................................................................ 14

*United States v. Comstock*,
 560 U.S. 126 (2010)..................................................................................11

*Vander Jagt v. O'Neil*,
 699 F.2d 1166 (D.C. Cir. 1982) .....................................................................5

*Yellin v. United States*,
 374 U.S. 109 (1963)................................................................................4, 7

**Constitution**

U.S. Const., Art. I, § 5, cl. 2............................................................................4

**Statutes**

2 U.S.C. § 192.............................................................................................9

**Legislative Authorities**

165 Cong. Rec. H4216-18 (daily ed. Apr. 6, 2022).............................................6

H. Rep. No. 109-377, 109th Cong. (2006).........................................................5

H. Res. 437, 109th Cong. (2005) ....................................................................5

H. Res. 503, 117th Cong. (2021) ...............................................................2, 4, 6

*Resolution Recommending that the House of Representatives Find Peter K. Navarro and Daniel
 Scavino, Jr., in Contempt of Congress for Refusal to Comply with Subpoenas Duly Issued by
 the Select Committee to Investigate the January 6th Attack on the United States Capitol*,
 H. Res. 1037, 117th Cong. (2d Sess. 2022) .............................................................6

Rule XI, Rules of the U.S. House of Representatives, 117th Cong. (2021) .....................................4

**INTRODUCTION**

Plaintiffs' opposition brief and Complaint suffer from the same flawed analysis of the House Select Committee to Investigate the January 6th Attack on the United States Capitol (Select Committee or Committee) and the third-party subpoena at issue here.  This is not a criminal prosecution.  Nor is this case about the content of Plaintiffs' communications.  This case is about Plaintiffs' challenge to a Congressional subpoena issued to a third-party service provider for non-content data in the three months surrounding the attack on the Capitol on January 6, 2021—an event that Plaintiffs helped plan and in which they participated.  Because Plaintiffs state no viable claim for relief, their complaint should be dismissed in its entirety.

**I.      Plaintiffs' challenges to the validity of the Select Committee fail**

Plaintiffs' opposition appears to advance two challenges to the Select Committee's authority to issue the challenged subpoena.  *First*, they insist that the Select Committee's efforts do not advance a legislative purpose.  *Second*, they argue that the Select Committee was not validly constituted.  Neither argument is correct.

**1.**  As to legislative purpose, Plaintiffs cannot cite a single case holding that the Select Committee's efforts do not advance a valid legislative purpose.  (This notwithstanding a barrage of efforts—like Plaintiffs'—to undermine the Select Committee.)  In stark contrast to Plaintiffs' arguments, the D.C. Circuit has specifically held that "the January 6th Committee plainly has a valid legislative purpose and its inquiry concern[s] a subject on which legislation could be had," and Congress has a "uniquely vital interest in studying the January 6th attack on itself to formulate remedial legislation and to safeguard its constitutional and legislative operations." *Trump v. Thompson*, 20 F.4th 10, 17, 41 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 1350 (U.S. Feb. 22, 2022) (No. 21-932) (internal quotation marks and citation omitted); *id.* at 38 (describing the Select Committee's investigation as an "exercise of core legislative functions").  Plaintiffs'

1

efforts to confine *Trump v. Thompson* to its facts, Opp. 19-20, do not diminish the D.C. Circuit's holding as to the overall legislative purpose of the Select Committee.  Moreover, judges in other cases have also rejected challenges to the Select Committee's legislative purpose.  *See* Oral Arg. Tr. at 33-34, *Budowich v. Pelosi*, No. 21-cv-3366 (D.D.C. Jan. 20, 2022), ECF 27; Order at 10, *Eastman v. Thompson*, No. 8:22-cv-00099 (C.D. Cal., Jan. 25, 2022), ECF 43 (holding that "the issues surrounding the 2020 election and the January 6th attacks" are "clearly 'subjects on which legislation could be had'").

Plaintiffs argue that the Select Committee "makes clear in [House] Resolution [503] defining their purpose that it is merely doing a criminal investigation to include investigating to punish those investigated."  Opp. 15.  Not so.  The resolution authorizes the Select Committee to: (1) "investigate the facts, circumstances, and causes relating to the domestic terrorist attack on the Capitol"; (2) "identify, review, and evaluate the causes of and the lessons learned from the domestic terrorist attack on the Capitol"; and (3) "issue a final report to the House containing such findings, conclusions, and recommendations for corrective measures . . . as it may deem necessary."  H. Res. 503, § 4(a)(1)-(3), 117th Cong. (2021).

And nowhere has the Select Committee "admit[ed] its 'purpose' is to oversee and review other criminal investigations."  Opp. 14.  To the contrary, the Select Committee has been crystal clear that it "is not charged with developing or prosecuting criminal cases, but it is investigating the attack on the U.S. Capitol and the surrounding events and causes."  ECF 34-1 at 2 n.1 (Cong. Defs.' Mot. to Dismiss "MTD"); *id.* at 9 ("the Select Committee is not criminally investigating Plaintiffs or anyone else").  As the D.C. Circuit explained, "[t]he Committee's announced purpose is to issue a final report to the House containing such findings, conclusions, and recommendations for such changes in law, policy, procedures, rules, or regulations as the

Committee may deem necessary . . . [t]he mere prospect that misconduct might be exposed does not make the Committee's request prosecutorial." *Trump*, 20 F.4th at 42 (internal quotation marks and citation omitted); *see also Sinclair v. United States*, 279 U.S. 263, 295 (1929), *overruled on other grounds by United States v. Gaudin*, 515 U.S. 506 (1995) (Congress's "authority . . . to require pertinent disclosures in aid of its own constitutional power is not abridged because the information sought to be elicited may also be of use" in "the prosecution of pending suits").

The Supreme Court has rejected the notion that it is "a valid objection" if a Congressional committee's investigation "might possibly disclose crime or wrongdoing." *McGrain v. Daugherty*, 273 U.S. 135, 179-80 (1927). Nor is it of concern that individual Committee Members may have referenced the possibility that criminal acts will be uncovered. *See* Opp. 18. All that is relevant is that the Select Committee's work concerns conduct that "could be the subject[] of appropriate [federal] legislation." *Shelton v. United States*, 404 F.2d 1292, 1297 (D.C. Cir. 1968).

In *Judicial Watch, Inc. v. Schiff*, the D.C. Circuit recently rejected an argument like that made here by Plaintiffs that a Congressional committee's subpoenas "served no legitimate legislative purpose." 998 F.3d 989, 992 (D.C. Cir. 2021) (internal quotation marks omitted). The court explained that "[t]he wisdom of congressional approach or methodology is not open to judicial veto . . .[n]or is the legitimacy of a congressional inquiry to be defined by what it produces." *Id.* (quoting *Eastland v. U. S. Servicemen's Fund*, 421 U.S. 491, 509 (1975)).

Here, the Select Committee's investigation and subpoena easily fall within the "legislative sphere": the Select Committee is investigating an attack on Congress itself, and the Committee's authorizing resolution includes customary investigatory powers such as the ability

to issue subpoenas.  *See* H. Res. 503, § 5(c)(4); *see also* Rule XI.2(m)(1), Rules of the U.S. House of Representatives, 117th Cong. (2021).  Even if this Court disagreed with the Select Committee's approach, that is no basis to invalidate the Committee's subpoena.  *Accord Doe v. McMillan*, 412 U.S. 306, 313 (1973) ("Although we might disagree with the Committee . . . we have no authority to oversee the judgment of the Committee in this respect or to impose liability on its Members if we disagree with their legislative judgment.").

    **2.**  As to their challenge to the composition of the Select Committee, Plaintiffs ask this Court to hold that the subpoena is invalid because (according to Plaintiffs) Congress failed to comply with its own rules.  *See* Opp. 19-25.  Plaintiffs do not cite a single case establishing that a person can collaterally attack a Congressional subpoena issued to another entity in a civil suit because that person alleges that the committee that issued the subpoena did not follow Congress's own rules.  In fact, the Rulemaking Clause of the Constitution bars federal courts from considering civil claims about the Select Committee's internal operations.  *See* U.S. Const., Art. I, § 5, cl. 2; *see* MTD 10 (discussing application of the Rulemaking Clause).

    Neither of the cases on which Plaintiffs rely to avoid the Rulemaking Clause is relevant here.  *Yellin v. United States* involved an appeal from a conviction for contempt of Congress. The Court held that "[t]o foreclose a defense based upon those rules, simply because the witness was deceived by the Committee's appearance of regularity, is not fair."  374 U.S. 109, 123 (1963).

    Here, Plaintiffs are not invoking the House Rules as a defense in a criminal proceeding, but to use them as a sword to attack a subpoena issued to a third party in a civil proceeding. *Yellin* does not stand for the proposition that a person can collaterally attack a subpoena issued to a third party when that person contends that Congress failed to follow its own rules.  Nor does

*Rangel* help Plaintiffs' arguments.  In *Rangel*, this Court emphasized that "judicial review of House Rules can take place only within a limited set of circumstances and may concern only a similarly limited set of constraints on the Rules."  *Rangel v. Boehner*, 20 F. Supp. 3d 148, 168 (D.D.C. 2013), *aff'd*, 785 F.3d 19 (D.C. Cir. 2015) (footnote omitted).  The court in *Rangel* held that it was not appropriate for it to weigh in on the House's application of its own rules.  So too here.

Plaintiffs repeatedly emphasize that the appointment of Members to the Select Committee was "unprecedented."  *See* Opp. 11, 24, 25.  But such composition of select committees is not new.  The Select Committee to Investigate the Preparation for and Response to Hurricane Katrina was formed with an authorizing resolution similar to the authorizing resolution here, but was composed of only eleven Members (all from the Republican majority). *See* H. Res. 437, § 2(a), 109th Cong. (2005); H. Rep. No. 109-377 at ii, 109th Cong. (2006).

Even had the composition of the Select Committee been "unprecedented," however, that does not make its subpoenas invalid.  As the D.C. Circuit noted—in a case on which Plaintiffs rely, *see* Opp. 22—it is a "startlingly unattractive idea, given [courts'] respect for a coequal branch of government, for [a federal court] to tell the Speaker of the . . . House of Representatives how many Democrats, and perhaps even which Democrats, he is to appoint to the standing committees, and perhaps to each such committee."  *Vander Jagt v. O'Neill*, 699 F.2d 1166, 1176 (D.C. Cir. 1982) (internal quotation marks omitted).  The same is true here with regard to how many Republicans or Democrats Speaker Pelosi should appoint.  The mere fact that "Speaker Pelosi did not appoint any of Minority Leader McCarthy's recommended minority members," Opp. 11, does not open the door to a federal court declaring the Select Committee's subpoenas invalid.

5

Even on the merits of their challenge to the Select Committee's composition, Plaintiffs' insistence that "[t]he authorizing resolution instructs the Speaker '*shall*' appoint thirteen members, *5* of whom *shall* be appointed after consultation with the minority leader," Opp. 24, fails to grapple with the deference due to an interpretation by Congress—and here the Speaker, as ratified several times by the full House—of the House's own resolution.  Indeed, the nine-member composition follows from the Minority Leader's withdrawal of his recommendations and refusal to engage in the consultative process after the Speaker rejected two of his recommendations.  *See* Compl. ¶¶ 69-70.  This withdrawal and refusal to engage in the consultative process created an ambiguity that the Speaker then addressed by interpreting the relevant House rules and House Resolution 503.  Consistent with House precedent and the structure of House Resolution 503—including its quorum requirement (H. Res. 503, § 5(c)(3))—the Speaker correctly determined that the Select Committee could operate with nine members.  Put simply, nothing in House Resolution 503 allows the Minority Leader to effectuate a unilateral stop to the operation of the Select Committee.

Furthermore, Plaintiffs do not address either the fact that, as we pointed out in our motion to dismiss, there is House precedent for a select committee operating with fewer than its full allotment of numbers when an authorizing resolution used substantially similar language, nor the fact that the full House has on multiple occasions ratified the actions of the Select Committee.  *See* MTD 11, 12.[1]  And, with respect to "consultation with the Minority Leader," the Speaker *did*

---

[1] Since the filing of Congressional Defendants' Motion to Dismiss, the full House has again ratified the structure and investigatory actions of the Select Committee.  *See Resolution Recommending that the House of Representatives Find Peter K. Navarro and Daniel Scavino, Jr., in Contempt of Congress for Refusal to Comply with Subpoenas Duly Issued by the Select Committee to Investigate the January 6th Attack on the United States Capitol*, H. Res. 1037, 117th Cong. (2d Sess. 2022); 165 Cong. Rec. H4216-18 (daily ed. Apr. 6, 2022) (directly

in fact speak with the Minority Leader about the appointments, which is sufficient to satisfy the resolution.  *See id*. at 12-13.  Under these circumstances, courts lack authority to overturn the procedural actions of the Speaker and the full House by micromanaging how the House operates.

## II.     The Select Committee is not criminally prosecuting Plaintiffs

Plaintiffs make much of the fact that they are criminal defendants in a different case brought by the Department of Justice.  *See* Opp. 21, 25, 28.  They contend that: (1) the subpoena here encroaches on the powers of the Department of Justice; (2) the existence of the subpoena taints the jury pool in their criminal case; and (3) the Select Committee's work improperly encroaches on state prerogatives because only states can enact criminal law.  None of these points invalidates the Select Committee's subpoena.

**1.**  Plaintiffs argue that because they are defendants in a criminal case, the Select Committee "is interfering with a co-equal branch of the government, the judiciary . . . in its criminal investigations of these Plaintiffs, that the Committee should defer to the prosecution by the Department of Justice on their behalf."  Opp. 21.  The Department of Justice's charges against Plaintiffs, however, are not "on Congress's behalf."  They arise from DOJ's review of Plaintiffs' efforts in planning and participating in the attack on January 6, 2021.  Plaintiffs' pending criminal case, therefore, is a far cry from the cases Plaintiffs cite that involved appeals from convictions for contempt of Congress.  *See, e.g.*, *Yellin*, 374 U.S. at 110; *Deutch v. United States*, 367 U.S. 456, 457-58 (1961); *Bowers v. United States*, 202 F.2d 447, 447-48 (D.C. Cir. 1953).  The Department of Justice is housed in a different branch of the Federal Government from Congress, and its pending criminal charges are separate and apart from the Select Committee's subpoena to Verizon for non-content data related to Plaintiffs' phone records.

---

presenting the House with challenges to the Select Committee's construction and operation, before the full House ultimately adopted the Select Committee's Report).

Plaintiffs fault Defendants for not justifying "how Mrs. Meggs' and her family's private and personal telephone data and messages or information about their communications for more than two months prior to January 6, 2021, and nearly a month after that date have a nexus to any legislative purpose." Opp. 14. But Plaintiffs were integrally involved in planning and carrying out the attack on the U.S. Capitol on January 6th. Their communications leading up to that event (and immediately following it) are highly pertinent to the precise issue the Select Committee is investigating. In any case, this is not a criminal investigation. Plaintiffs' confusion of this case for a criminal one explains why the cases on which they rely for the proposition that Congress must establish the pertinence of each piece of information sought—*Deutch*, 367 U.S. at 457 and *Bowers*, 202 F.2d at 447-48—are inapposite.

*Deutch* involved an appeal from a *criminal conviction* for refusal to answer questions before a Congressional subcommittee. In *Deutch*, the pertinence of the specific questions was at issue because that was an element of the criminal offense with which the witness was charged. *Deutch*, 367 U.S. at 471 ("It was incumbent upon the prosecution in this case to prove that the petitioner had committed the offense for which he was indicted. One element of that offense was the pertinence to the subject matter under inquiry of the questions the petitioner refused to answer.").

Nowhere did *Deutch* establish a broader burden on Congress to justify each piece of information it seeks in an investigation by drawing a specific nexus between the information sought and a defined legislative purpose. To the contrary, the Court specifically limited its reasoning to the criminal case at hand, explaining, "[o]ur decision is made within the conventional framework of the federal criminal law, and in accord with its traditional concepts." *Id.* at 472. Similarly, *Bowers*, 202 F.2d 447—on which Plaintiffs rely on page 14 of their brief—

involved an appeal from a criminal conviction.  *Bowers* and *Deutsch* are entirely inapplicable here.  The Supreme Court has long held that "[t]he wisdom of congressional approach or methodology is not open to judicial veto."  *Eastland*, 421 U.S. at 509.  "Nor is the legitimacy of a congressional inquiry to be defined by what it produces.  The very nature of the investigative function—like any research—is that it takes the searchers up some 'blind alleys' and into nonproductive enterprises."  *Id.*

In stark contrast to *Bowers* and *Deutch*, this is a *civil* case that Plaintiffs have initiated to stymie Congress from obtaining information pursuant to a subpoena issued to Verizon.  Unlike in *Deutch* and *Bowers*, the criminal case against Plaintiffs does not arise from any charges brought for failure to cooperate with Congress.  The criminal charges that Plaintiffs face relate to their efforts to plan and participate in the attack on the Capitol on January 6th.  *See* MTD 3 (describing the charges in Plaintiffs' criminal case).  Plaintiffs' suggestion that they can leverage their criminal charges as protection from Congress obtaining information from a third party (Verizon) is wrong.  Indeed, it would be quite perverse to reward criminal defendants by immunizing them (and third parties with information relevant to a Congressional investigation) from Congressional subpoenas.

Even if the pertinence analysis arising from criminal prosecutions under 2 U.S.C. § 192 could be injected into a civil challenge to a Congressional subpoena issued to a third party, the pertinence of Plaintiffs' data during the timeframe surrounding January 6th is evident: Plaintiffs have been indicted for helping plan and participating in the events.  Information regarding the planning and consequences of the events of January 6th would likely appear in records both pre-dating and post-dating the attack.  *See* MTD 3-5.

**2.**   Plaintiffs contend that the fact that "[t]he Select Committee is seeking [Connie Meggs's] and [her] family's personal phone data in the same jurisdiction at the same time as where she is to have a 'fair trial' would be highly prejudicial."  Opp. 22; *see also id.* at 27 ("The Committee is repeatedly impacting defendants' right to a fair trial.").  It remains unclear how subscriber information, connection records, and records of session times and durations of calls and messages for the period of November 1, 2020 through January 31, 2021, *see* ECF 38-1 at 4, could taint a jury pool.  *See* MTD 22-23.  And there are numerous procedural protections that apply in that criminal proceeding to protect the Meggs's right to a fair trial.  In any event, the civil nature of this case is fatal to Plaintiffs' Sixth Amendment claim.

Plaintiffs cite no authority for their assumption that they have a civil cause of action against a Congressional committee under the Sixth Amendment.  Far from creating a civil cause of action, the Supreme Court has instructed that "[t]he protections provided by the Sixth Amendment are explicitly confined to criminal prosecutions."  *Austin v. United States*, 509 U.S. 602, 608 (1993) (internal quotation marks and citation omitted).  To the extent Plaintiffs truly believe they have a good faith argument under the Sixth Amendment, they are free to raise those arguments in their criminal trial.

No matter the strength of any Sixth Amendment argument, however, concern about tainting a jury pool in a criminal matter has no bearing on the validity or enforceability of a Congressional subpoena.

**3.**   Plaintiffs insist that the Select Committee's work improperly encroaches on the states because only states can enact criminal law.  *See* Opp. 14 (arguing the Committee's disclosed purpose "fall[s] under criminal investigation - which belongs to the states").  Plaintiffs argue that "addressing actions that have been charged by the government as criminal" during a

10

Congressional investigation "reflects Congress wading into criminal law and violence." *Id.* at 16. They contend that such investigation is improper because issues of "criminal law and violence [are] specifically not Congress' to legislate because [they] belong[] to the states." *Id.*

This argument is nonsense. A Congressional investigation that may result in the creation or recommendation of new, federal criminal laws is not a "criminal investigation." And Congress obviously has the Constitutional authority to enact criminal laws and has been doing so since 1790. The Constitution "grants Congress broad authority to create such crimes" even beyond those on which the Constitution "speaks explicitly." *United States v. Comstock*, 560 U.S. 126, 135-36 (2010). Indeed, "Congress routinely exercises its authority to enact criminal laws in furtherance of, for example, its enumerated powers to regulate interstate and foreign commerce, to enforce civil rights, to spend funds for the general welfare, to establish federal courts, to establish post offices, to regulate bankruptcy, to regulate naturalization, and so forth." *Id.* at 136; *see also Puerto Rico v. Sanchez Valle*, 579 U.S. 59, 78 (2016). Congress obviously has authority to enact legislation aimed at preventing future attacks on the Capitol building itself, and the Federal Government obviously has authority to investigate and enforce such laws.

III.     **Plaintiffs' other arguments fail**

Plaintiffs' remaining arguments—that: (1) the subpoena violates their First Amendment rights; (2) the subpoena violates their Fourth Amendment rights; (3) the subpoena interferes with their marital privilege; and (4) the subpoena violates the Stored Communications Act—fail to meaningfully address the arguments in the Congressional Defendants' motion to dismiss.

**1.** As to the First Amendment, instead of responding to the Congressional Defendants' arguments—that a subpoena for non-content data does not impinge First Amendment expression, and that *Eastland* forecloses any such objection to a Congressional subpoena—Plaintiffs repeat their assertion that "Congress by definition would be investigating 'political beliefs' as January

11

6th took place both at the Capitol, where politics are fundamental, and in relation to a Rally for the Incumbent President." Opp. 29; *see also* Compl. ¶ 31. But nowhere do Plaintiffs explain how non-content data reflects any "political beliefs" or other speech protected by the First Amendment. It does not. *See* MTD 19.

Plaintiffs instead dispute the scope of the subpoena. Opp. 30. But, as Congressional Defendants explained in their memorandum in support of their motion to dismiss, the subpoena seeks no such information.[2] Any dispute about content information, therefore, is purely manufactured: There is no live dispute about non-content information because the Select Committee does not seek such information from Verizon.[3]

**2.** On their Fourth Amendment claim, Plaintiffs assert that "[t]he Select Committee's Subpoena constitutes an unreasonable search and seizure, violates Mrs. Meggs' right to be secure in her person, papers, and effects under the Fourth Amendment of the United States Constitution." Opp. 33. Plaintiffs' heavy reliance on *Carpenter v. United States*, 138 S. Ct. 2206 (2018), *id.*, is misplaced.

*Carpenter*, by its own terms, does not apply to the records the subpoena seeks. *Carpenter* addressed whether the Government's collection of historical cell-site location

---

[2] MTD 14 (explaining that the subpoena seeks "subscriber information" and "connection records and records of session times and durations," that "[s]ubscriber information is limited to information about the user of the account, associated phone numbers, and other identifying numbers" and "'[c]onnection records' and 'records of session times and durations' simply mean records of the date and time, duration, and sender and recipient of any call, text message, or other communication").

[3] Plaintiffs appear to misread the language of the subpoena, claiming that the Select Committee's demand for "data connection detail records" should be distorted to include a demand for the underlying data. Opp. 12. The Select Committee actually seeks, for the covered period, "All . . . data-connection detail records associated with Phone Numbers, including all phone numbers, IP addresses, or devices that communicated with the Phone Number via . . . data connections." *Id.*

information (CSLI) from a third-party telecommunications company constituted a "search" under

the Fourth Amendment.  138 S. Ct. at 2211.  The Supreme Court had previously held in *Smith v.*

*Maryland*, 442 U.S. 735 (1979), that recording the numbers that a particular phone number

dialed did not constitute a search because, among other reasons, such records were voluntarily

disclosed to the phone company and thus there was no reasonable expectation of privacy in them.

*Id.* at 743-44.  In *Carpenter*, the Court "decline[d] to extend" *Smith* to historical CSLI, "[g]iven

the unique nature of cell phone *location* records" and their ability to "achieve[] near perfect

surveillance."  *Carpenter*, 138 S. Ct. at 2217-18 (emphasis added); *see also id.* at 2219

(distinguishing historical CSLI from the "limited capabilities of a pen register," which, consisted

of "telephone call logs [that] reveal little in the way of 'identifying information.'") (citations

omitted).

       The subpoena at issue here seeks only subscriber information, connection records, and

records of session times and durations.  *See* ECF 38-1 at 4.  It does not seek historical CSLI or

the contents or substance of any communications associated with Plaintiffs' phone number.  *See*

*id.*  The records sought by the Select Committee, therefore, are governed squarely by *Smith*, not

*Carpenter*.  *See Carpenter*, 138 S. Ct. at 2220 (emphasizing the decision is a "narrow one" that

"do[es] not disturb the application of *Smith*").  *Carpenter*, therefore, does not save Plaintiffs'

Fourth Amendment claim.

       **3.**  As to the marital communication privilege, Plaintiffs insist that the subpoena to

Verizon "would capture communications that would include those between a private married

couple."  Opp. 25.  Plaintiffs again ignore the limited scope of the subpoena they challenge; the

subpoena does not seek the content of marital communications and thus any issue about that is a

red herring.

Plaintiffs' marital communications arguments are irrelevant in any event because they address a different evidentiary privilege.  "There are two distinct marital evidentiary privileges under federal law: the marital communications privilege and the adverse spousal testimonial privilege."  *United States v. Brock*, 724 F.3d 817, 820 (7th Cir. 2013).  The marital communications privilege seeks to protect "information privately disclosed between husband and wife in the confidence of the marital relationship."  *Trammel v. United States*, 445 U.S. 40, 51 (1980).  "The second marital privilege, the spousal testimonial privilege, applies to any adverse testimony one spouse might provide as a witness against the other in a criminal case."  *Brock*, 724 F.3d at 822.  Plaintiffs' arguments focus on the marital testimonial privilege.  Opp. 31 (quoting a Seventh Circuit case on "the spousal *testimonial privilege*") (emphasis added); *id.* at 32 (quoting a First Circuit case on "the spousal testimonial privilege").  But this is not a criminal case and nowhere does the challenged subpoena ask one spouse to testify against the other; it instead directs that Verizon produce its non-content information.

As to the marital communications privilege, the subpoena does not seek "information privately disclosed between husband and wife," *Trammel*, 445 U.S. at 51, because the subpoena at issue seeks data (not the content of information disclosed) from Verizon (not a spouse of either plaintiff).  *Cf. S.E.C. v. Lavin*, 111 F.3d 921, 923 (D.C. Cir. 1997) (permitting additional discovery on marital communications privilege in connection with subpoena seeking disclosure of tapes which revealed the content of telephone conversations between spouses).  Plaintiffs cannot invoke the marital communications privilege over information the subpoena simply does not seek.  Plaintiffs' response to the joint criminal activity argument fails for the same reason: it addresses the testimonial privilege that is plainly inapplicable here.  Opp. 31-32.

14

Plaintiffs also ignore Congressional Defendants' arguments that the marital communications privilege does not apply to communications that include third parties.  MTD 18.  By refusing to address this argument, they have waived the issue.  *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived.").

**4.**  Finally, Plaintiffs simply ignore the Congressional Defendants' argument on the Stored Communications Act.  Congressional Defendants explained in the motion to dismiss why the term "government entity" as discussed in the SCA does not encompass Congress.  *See* MTD 14-17.  Plaintiffs do nothing to grapple with the Supreme Court's holding in *Hubbard v. United States*, 514 U.S. 695 (1995), that "department or agency of the United States"—as used in 18 U.S.C. § 1001—refers *only* to Executive Branch entities, explaining that "while we have occasionally spoken of the three branches of our Government, including the Judiciary, as 'departments,' that locution is not an ordinary one[,]" and "[f]ar more common is the use of 'department' to refer to a component of the Executive Branch."  514 U.S. at 699 (citation omitted); see also MTD 16 (discussing *Hubbard*).  Plaintiffs do not even mention *Hubbard*, let alone attempt to distinguish it.  They cannot.  The Stored Communications Act plainly does not apply here.

## CONCLUSION

The Complaint should be dismissed in its entirety.

Respectfully submitted,

/s/ *Douglas N. Letter*
DOUGLAS N. LETTER
   *General Counsel*
TODD B. TATELMAN
   *Principal Deputy General Counsel*
MICHELLE S. KALLEN
   *Special Litigation Counsel*
ERIC R. COLUMBUS
   *Special Litigation Counsel*
STACIE M. FAHSEL
   *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

John A. Freedman
Paul Fishman
Amy Jeffress
David J. Weiner
John M. Hindley
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, D.C. 20001
(202) 942-5000
John.Freedman@arnoldporter.com
Paul.Fishman@arnoldporter.com
Amy.Jeffress@arnoldporter.com
David.Weiner@arnoldporter.com
John.Hindley@arnoldporter.com

SHER TREMONTE LLP
Justin M. Sher[*]
Michael Tremonte[*]
Noam Biale
Maya Brodziak[*]
Kathryn E. Ghotbi[*]
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
JSher@shertremonte.com

16

MTremonte@shertremonte.com
NBiale@shertremonte.com
MBrodziak@shertremonte.com
KGhotbi@shertremonte.com

Dated: April 18, 2022

---

[*] Appearing pursuant to 2 U.S.C. § 5571(a).

17

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2022, I caused the foregoing document to be filed via the CM/ECF system for the U.S. District Court for the District of Columbia, which I understand caused a copy to be served on all registered parties.

*/s/ Douglas N. Letter*
Douglas N. Letter